UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| RONNIE LEE BOWLING, <br><br> Petitioner, <br><br> v. <br><br> RANDY WHITE, *Warden, Kentucky State Penitentiary*, <br><br> Respondent. | Civil No. 12-189-ART <br><br> **MEMORANDUM OPINION & ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Seven years elapsed between Ronnie Lee Bowling's arrest and his conviction for attempted murder. Bowling spent those seven years in jail. Kentucky law requires what common sense suggests: That those seven years should be credited towards his resulting 20-year sentence. But the sentencing court did not credit Bowling with those years, and Bowling never appealed. Kentucky's Department of Corrections, however, *did* credit Bowling with that time. The question presented by this case is whether the Department of Corrections can remedy the sentencing court's error.

Surprisingly, it is Bowling who insists that the Department of Corrections may not amend the sentencing court's failure to award jail-time credit. Bowling seeks to challenge the underlying conviction for attempted murder, and he may do so only if he remains "in custody" on that charge. Before answering whether Bowling is "in custody" (a question of federal habeas law), the Court must first determine whether Bowling's sentence has expired

under Kentucky law. Because the answer is unclear, the Court certifies two questions to the Supreme Court of Kentucky.

## BACKGROUND

In 1989, Bowling was arrested on suspicion of having committed attempted murder, among other crimes. *See* R. 39 at 10. In 1996, a Rockcastle jury found Bowling guilty of the attempted murder charge. R. 39-21 at 1. Whether Bowling remains "in custody" on that charge turns, in large part, on the legal effect of an error by the court that imposed his sentence. The court sentenced Bowling to an indefinite term of imprisonment, not to exceed 20 years. R. 39-20 at 2. No one disputes that the court should have given Bowling credit for the nearly seven years he spent in jail after his arrest for that offense but before his conviction. R. 39 at 10; Ky. Rev. Stat. § 532.120(3) (West 1997) (requiring a sentencing court to credit a prisoner with "time spent in custody prior to the commencement of the sentence"). Unfortunately, it is also undisputed that the sentencing court gave Bowling no jail-time credit. R. 39-20 at 2 (awarding Bowling "0 days" of jail-time credit). Unless Bowling's 20-year sentence began in 1989, he was still serving the Rockcastle sentence—and thus was in custody—when he filed his habeas petition in 2012.[1]

## DISCUSSION

The court's award of no credit was neither amended nor appealed, and an unamended, unappealed award of jail-time credit—even when erroneous—has full legal effect. *See Winstead v. Commonwealth*, 327 S.W.3d 479, 489–91 (Ky. 2010) (requiring the reinstatement of an erroneous award of jail-time credit). The Warden nevertheless argues

---

[1] The parties have not raised (and the Court's review of the record has not revealed) any other basis upon which to conclude that Bowling was "in custody" at the time that he filed his petition. Nobody suggests, for instance, that he will be subject to a term of probation when his sentence expires. *See e.g.*, *Lee v. Rios*, 360 F. App'x 625, 628 n.2 (2010).

that Bowling is no longer "in custody," because the Department of Corrections correctly calculated his sentence. R. 81 at 3. The Warden notes that, according to Bowling's Department of Corrections' resident card, he has been serving his sentence since 1989. *Id.* So, the argument goes, the Department of Corrections got Bowling's sentence right, and the Department of Corrections' assessment effectively remedied the trial court's error. *See id.* But whether the Department of Corrections has such authority is far from clear.

I. **It Is Unclear Whether The Department Of Corrections May Correct An Erroneous Denial Of Jail-Time Credit.**

The Warden's argument hangs precariously on a disputed premise: That the Department of Corrections can effectively trump the trial court's error. That argument finds some support in Kentucky law, for the executive branch is supreme in matters relating to the detention and release of prisoners. *See Winstead*, 327 S.W.3d at 483 ("The Executive Branch, in the form of the Department of Corrections—not the judicial branch—is ultimately responsible for determining when prisoners in its custody are eligible for release."). More recent authority, however, weighs heavily against the Warden's position. *Bard v. Commonwealth* expressly rejected the notion that the Department of Corrections could "set or modify presentencing custody credit." 359 S.W.3d 1, 5 (Ky. 2012). Reviewing the same version of Ky. Rev. Stat. § 532.120(3) in effect at the time of Bowling's sentencing, the Court held that "the responsibility to credit a defendant for presentencing jail time belonged *exclusively to the trial court*." *Id.* (emphasis added). Therefore, the Department of Corrections' attempt to modify such an award "was an invalid usurpation of the power granted to the trial court by Ky. Rev. Stat. § 532.120(3)." *Id.* at 5–6.

3

But does *Bard* really mean that a failure to award jail-time credit must stand forever, unless corrected by the court or appealed? Although *Bard*'s capacious language could fairly embrace this case, the Court has serious doubts regarding whether the Supreme Court of Kentucky would so interpret its precedent. *Bard* could be distinguishable for at least two reasons. First, a 2011 amendment to the key statute now vests the Department of Corrections—not the trial court—with the responsibility of awarding jail-time credit. *See* Ky. Rev. Stat. § 532.120(3) (2012); *Bard*, 359 S.W.3d at 4 n.3 (noting the amendment but also stating that it was not in effect at the time of Bard's sentencing or the Department of Corrections' recalculation of his jail-time credit). Perhaps the Department of Corrections' recalculation of Bowling's sentence post-dates the statutory amendment (the parties have not briefed that issue), and perhaps *Bard* would not apply under such circumstances.

Second, *Bard* arose on very different facts. In *Bard*, the sentencing court's error favored the prisoner. *Id.* at 2–4. Here, the error effectively extended Bowling's sentence by seven years—in direct violation of Kentucky law. Although an erroneous *award* of jail-time credit is not an illegal sentence, an erroneous *denial* of jail-time credit sure seems to fit the bill, because it illegally extends the duration of a prisoner's incarceration. *See Winstead*, 327 S.W.3d at 490 & n.39. And the Supreme Court of Kentucky recently suggested that the organs of government cannot participate in the execution of an illegal sentence. *McClanahan v. Commonwealth*, 308 S.W.3d 694, 701 (Ky. 2010) ("Our courts must not be complicit in the violation of public policy embedded in our sentencing statutes by turning a blind eye to an unlawful sentence . . . .").

At the end of the day, the Court is left with the following indications of Kentucky law: (1) very strong language from *Winstead* suggesting that the Department of Corrections

*can* correct the trial court's error; (2) *Bard*'s holding that the Department of Corrections *cannot* correct the trial court's error (though one could argue that *Bard* could be limited only to instances where the prisoner benefits); and (3) an amended statute clearly vesting the Department of Corrections with authority that it lacked when Bowling was sentenced. Given this uncertain background, the Court will certify two questions to the Supreme Court of Kentucky, pursuant to Kentucky Rule of Civil Procedure 76.37.

Accordingly, it is **ORDERED** that:

(1) The Court referred this case to a magistrate judge for a report and recommendation. The parties properly presented the other issues in this case to the magistrate judge, and the Court has adopted the magistrate judge's report as to those other issues. But the parties did not cite *Bard* in their briefing before the magistrate judge, and the Court believes further elucidation by the Supreme Court of Kentucky is necessary to decide this question. The Magistrate Judge's report and recommendation, R. 67, as to this narrow issue is therefore **VACATED**.

(2) The following questions are **CERTIFIED** to the Supreme Court of Kentucky:

a. Whether *Bard* controls this case, so that the Department of Corrections lacked the authority to correct the sentencing court's failure to award jail-time credit; and

b. Whether factually Bowling's Rockcastle sentence has expired.

(3) The Clerk of Court **SHALL FORWARD** to the Supreme Court of Kentucky:

a. A copy of this order; and

b. Any portion of the record that Court requests.

(4) The warden shall bear the costs of this certification order, because the Court has granted Bowling pauper status. R. 27; *see* Ky. R. Civ. P. 76.37(5) (authorizing the certifying court to assign costs).

This the 29th day of April, 2014.

Signed By:
*Amul R. Thapar* AT
United States District Judge